IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| **v.** | **Criminal No.** 08-310 (FAB) |
| WILFREDO ROSARIO-CAMACHO [4], LUIS RODRIGUEZ-SOSTRE [5], JOSUE PEREZ-MERCADO [10], RAMON MAYSONET-SOLER [14], JOSE NEGRON-SOSTRE [18], | |
| **Defendants.** | |

## OPINION AND ORDER

Besosa, District Judge.

Now before the Court are the defendants' motions for judgment of acquittal and/or new trial, one on behalf of each convicted defendant (Docket Nos. 2695, 2759, 2760, 2774, 2777, and 2778),[1] and the government's response to those motions (Docket No. 2905). The Court denies all motions for acquittal and for new trial.

## Background

The Court does not rehash the entire trial here. Background information or facts will be recounted as needed in the Court's subsequent legal analysis of particular issues. The Court provides

---

[1] In his motion for acquittal (Docket No. 2774), defendant Josue Perez-Mercado joined the arguments in defendant Jose Negron-Sostre's motion for acquittal (Docket No. 2760). Defendant Wilfredo Rosario-Camacho joined "his co-defendants' arguments in support of their respective motions." (Docket No. 2778.) Defendant Luis Rodriguez-Sostre joined Jose Regron-Sostre's motion for acquittal. (Docket No. 2777 at 10.)

at this stage a general description of the trial proceedings to
bring the grounds for acquittal into a workable perspective.  See
United States v. Stierhoff, 549 F.3d 19, 21 (1st Cir. 2008).  The
Court conveys the facts throughout the opinion in the light most
favorable to the verdict.  United States v. Rodriquez-Marero, 390
F.3d 1, 6 (1st Cir. 2004).

Defendants  Wilfredo  Rosario-Camacho  ("Rosario"),  Luis
Rodriguez-Sostre ("Rodriguez"), Josue Perez-Mercado ("Perez"),
Ramon  Maysonet-Soler  ("Maysonet"),  and  Jose  Negron-Sostre
("Negron") were charged with various crimes related to a drug
conspiracy.  Count One of the Indictment charged the defendants
with conspiring to possess with intent to distribute controlled
substances within 1,000 feet of a public school.  Count Two of the
Indictment charged the defendants with aiding and abetting in the
possession with intent to distribute heroin within 1,000 feet of a
public school.   Count Three of the Indictment charged the
defendants with aiding and abetting in the possession with intent
to distribute crack cocaine within 1,000 feet of a public school.
Count Four of the Indictment charged the defendants with aiding and
abetting in the possession with intent to distribute cocaine within
1,000 feet of a public school.  Count Five of the Indictment
charged the defendants with aiding and abetting in the possession
with intent to distribute a mixture or substance containing a
detectable amount of marijuana within 1,000 feet of a public

school.  Count Six of the Indictment charged the defendants with conspiring to use and carry firearms and ammunition during and in relation to a drug trafficking crime.  See Docket Nos. 4 and 2663.

After a three-month-long trial, a jury found the defendants guilty of Counts One, Two, Three, Four, and Five in the Indictment. (See Docket No. 2661.)  Defendants Rosario, Rodriguez, and Maysonet were also found guilty of Count Six of the Indictment.  (Id.; Docket No. 2663.)  The Court also entered a preliminary order of forfeiture as to all defendants pursuant to what was incorrectly labeled by the Government as Count 14 of the Indictment.  (Docket No. 2663.)

The jury also made particularized findings in a "Special Verdict Form" as to the quantity of drugs involved in the alleged crimes for each individual defendant.  (Docket No. 2664.)  In some instances, the jury indicated its unanimous agreement on a particular drug quantity; in some instances, however, the jury indicated no finding as to a drug quantity - the Special Verdict Form in certain places contained the notation "N/A", a common abbreviation for "not available" or "not applicable," and left some in blank.  See Id.

## Legal Standards and Discussion

## I.   Motion for Judgment of Acquittal

In reviewing the defendants' motions for judgments of acquittal, the Court considers the evidence "in the light most favorable to the prosecution" and determines whether the "body of proof, as a whole, has sufficient bite to ground a reasoned conclusion that the government proved each of the elements of the charged crime beyond a reasonable doubt." U.S. v. Lara, 181 F.3d 183, 200 (1st Cir. 1999) (citations omitted).  All evidentiary disputes and credibility questions are resolved in favor of the government; the Court must also draw all reasonable inferences in favor of the government's case.  Id.  The jury's verdict will stand unless the evidence could not have persuaded a rational juror of the defendants' guilt beyond a reasonable doubt.  U.S. v. Soler, 275 F.3d 146, 151 (1st Cir. 2002) (citing Lara, 181 F.3d at 200).

The defendants base their motions for acquittal on the following grounds:[2]  (1) the jury's verdict was inconsistent; (2) multiple conspiracies were proven such that the evidence presented by the Government at trial constituted a variance to the Indictment; (3) the evidence as to Count One was insufficient; (4) the Court improperly admitted hearsay testimony; (5) the

---

[2]  The defendants base their arguments for acquittal on many common grounds; the Court therefore addresses those grounds together in its analysis.  Where a defendant argued for acquittal based on grounds unique to him, the Court will address that ground for acquittal separately.

Court's instructions to the jury were improper; (6) the evidence as to Counts Two, Three, Four and Five was insufficient; and (7) the forfeiture count was presented incorrectly for the Court's disposition, and therefore Court's order regarding the forfeiture allegation (Count 14 of the Indictment) was improper.[3]

### A.   Inconsistent Verdict

Defendants challenge the jury's guilty findings on the basis that the jury's verdict was inconsistent. (See Docket Nos. 2695 at 5-6; Docket No. 2777 at 3, 4.) Specifically, defendant Rodriguez explains that a comparison of the Verdict Form with the Special Verdict form shows "that a clear instruction [regarding] defendants theory of defense [sic] based on multiple conspiracy, as requested by counsel, was not only warranted but indispensable in this case." (Docket No. 2777 at 4.) Further, defendant Maysonet argues that the jury's finding of guilty as to Count 1, as well as to the aiding and abetting counts, is inconsistent with its finding on the Special Verdict Form that it did not unanimously agree by proof beyond a reasonable doubt that

---

[3]  Defendant Negron also argues that the Court "should review the Grand Jury transcripts" to determine what additional evidence was presented and whether there was probable cause to believe any offense was committed. (Docket No. 2760 at 7.) Id.  The Court declines Negron's invitation to delve into the Grand Jury proceedings at this stage to make a probable cause determination; the Court applies the standards appropriate for a motion for judgment of acquittal motion to the discussion in this opinion, which includes an analysis of the sufficiency of the evidence against Negron and his co-defendants.

defendant Maysonet conspired to possess with the intent to distribute a mixture or substance containing a detectable amount of either crack, Percocet, Xanax, or marijuana. (See Docket Nos. 2695 at 5; 2554 at 16-19.)

The defendants theorize that the evidence at trial showed multiple conspiracies were afoot, not a single conspiracy, and that the jury was therefore confused, leading to the "contradictory" findings in the Special Verdict Form.  As defendant Maysonet puts it:  "The inherent contradiction in the finding as to Count 1 shows that their verdict cannot be based on the evidence but was merely a compromise verdict to avoid finding the multiplicity of conspiracies that the evidence pointed to."  (Docket No. 2695 at 5.)  Maysonet contends that "the jury, if it could legitimately find guilt for the conspiracy, it must have also found that [Maysonet], as well as all defendants, were guilty of conspiring to distribute all the drugs" which "shows they did not understand what to be guilty of the conspiracy entailed and, instead of entering a finding of not guilty because of the multiplicity of conspiracies proven but not charged, it opted to make independent, and contradictory, finding of guilt."  Id.

As the First Circuit Court of Appeals has explained, "Even if the verdicts were inconsistent, the Supreme Court and this court have clearly stated that inconsistent verdicts are not basis for setting aside a conviction." U.S. v. Crochiere, 129 F.3d 233,

239 (1st Cir. 1997) (citing <u>United States v. Powell</u>, 469 U.S. 57 (1984) "(reaffirming the rule in <u>Dunn v. United States</u>, 284 U.S. 390 (1932), that inconsistency of verdicts is not a basis for vacating a conviction, and rejecting any exceptions to the rule); <u>United States v. Lopez</u>, 944 F.2d 33, 41 (1st Cir. 1991) (noting that 'the Supreme Court has made it clear that verdict inconsistency in itself is not a sufficient basis for vacating a conviction')" (internal citation omitted)).  In cases involving inconsistent verdicts on multiple counts, the rule is well established that no one, either the defendants or the government, may use the inconsistency to impeach the verdict.  <u>Dunn</u>, 284 U.S. at 393.

The defendants present no legal authority to support their contention that the alleged inconsistency "mandates a verdict of not guilty," (<u>Id.</u> at 6), and they are wrong to theorize about the rational, the rhyme or the reason behind the jury's findings. Furthermore, as the Government points out, if the Supreme Court's holding in <u>Powell</u>, the seminal case on this issue, "precludes review or challenge of an inconsistent jury verdict where the jury acquits as to some counts and finds guilt as to others, this prohibition should carry greater force where the only alleged inconsistency is the failure to attribute specific drug quantities for every Defendant as to every drug charged in the conspiracy." (Docket No. 2905 at 4-5.)

For these reasons, this Court will not disturb the jury's verdict on grounds that defendants believe that verdict was inconsistent or contradictory.

**B.    Multiple Conspiracies: Sufficiency of Evidence; Variance to Indictment; Improper Jury Instruction; Improper Admission of Hearsay Evidence**

The defendants argue that the evidence showed they were involved in multiple conspiracies, not a single conspiracy. Defendants therefore claim that there is a variance between the charges alleged against the defendants in the Indictment and the evidence introduced against them at trial because the Indictment alleges a single conspiracy.  Relatedly, the defendants contend that the Court's failure to instruct the jury as to the defense's theory - that there were multiple conspiracies - "left the jury without the tools to understand the theory, and/or make an intelligent decision as to multiple conspiracies . . ." (Docket No. 2760 at 15-16.)  Because there was sufficient evidence presented at trial to support the charge in Count One as contained in the indictment of a single conspiracy, the Court rejects these arguments.

<u>Sufficiency of the Evidence as to Count One</u>

The Court first addresses whether there was sufficient evidence on the record to support the jury's verdict as to Count One of the Indictment.  A court may enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a

conviction.  Fed.R.Crim.P. 29(a).  "The verdict must stand unless
the evidence is so scant that a rational factfinder could not
conclude that the government proved all the essential elements of
the charged crime beyond a reasonable doubt."  U.S. v. Rodriguez-
Velez, 597 F.3d 32, 39 (1st Cir. 2010) (citing United States v.
O'Brien, 14 F.3d 703, 706 (1st Cir. 1994).

        In this case, to prove the defendants' culpability of the
charged conspiracy, the government was required to show "the
existence of a conspiracy, the defendant's knowledge of the
conspiracy, and the defendant's voluntary participation in the
conspiracy."  United States v. Gomez-Pabon, 911 F.2d 847, 852 (1st
Cir. 1990).  The government must show "intent to agree and intent
to commit the substantive offense" to establish that each defendant
was involved in a conspiracy.  Id. at 853 (internal citations and
quotation omitted).  The government was not required to show that
each co-conspirator knew about or had contact with all other
members of the conspiracy or knew details about and participated in
every act in furtherance of the conspiracy.  U.S. v. Ofray-Campos,
534 F.3d 1, 33 (1st Cir. 2008) (citing United States v.
Martinez-Medina, 279 F.3d 105, 113 (1st Cir.2002)); see also U.S.
v. Rivera-Santiago, 872 F.2d 1073, 1079 (1st Cir. 1989) ("A
defendant may culpably join a drug-trafficking conspiracy without
knowing the full extent of the enterprise or the identities of all
the coconspirators").  The Court assesses only the admissible

evidence at trial in applying the sufficiency standard. United States v. Aviles-Colon, 536 F.3d 1, 13 (1st Cir. 2008).

The Court considers the totality of the evidence when deciding whether the evidence supports the existence of a single conspiracy. U.S. v. Mangual-Santiago, 562 F.3d 411, 421 (1st Cir. 2009) (citing U.S. v. Sanchez-Badillo, 540 F.3d 24, 29 (1st Cir. 2008). The First Circuit Court of Appeals has applied the following factors to determine whether one or multiple conspiracies existed: "(1) the existence of a common goal, (2) interdependence among the participants, and (3) overlap among the participants." Sanchez-Badillo, 540 F.3d at 29.

The record in this case is clear, and the Court's analysis on this issue is straightforward. The government produced compelling evidence supporting each element of the charged conspiracy, such that a rational trier of fact would have no trouble finding each defendant guilty of that conspiracy.[4]

Government witness Alfredo Sierra, who was an admitted "lookout" and who assisted with drug sales as a seller and a runner, and government witness Jesus Robles, who was also a seller discussed the conspiracy's timeline including the locations in

_____

[4] Although the Court presents evidentiary highlights from trial proceedings as presented by the government in its brief (Docket No. 2905 at 6-8) and independently reviewed and confirmed through analysis of the trial transcripts and the Court's own trial notes, the government's presentation of evidence in its brief alone demonstrates that the evidence brought against the defendants as to Count One was sufficient for a rational jury to find them guilty.

which aspects of the conspiracy took place over time. Robles
explained that, eventually, multiple sellers congregated in one
location, "Calle Quince," to sell various drug types and brands.
(See U.S. v. Rodriguez-Velez, 597 F.3d 32, 39 (1st Cir. 2010).
Sierra also explained the role he and other "lookouts" played in
the conspiracy to sell the different drugs. By warning
participants in the drug sales of approaching law enforcement
officials, the lookouts assisted all of the sellers to protect
their business. A jury could infer that the use of lookouts
benefitting multiple sellers pointed to an organized chain of
command, or at least an agreed upon system of protection for anyone
selling drugs in the Calle Quince location.

        A jury could also infer the existence of an organized
drug-trafficking enterprise from the testimony regarding the
designated shifts for drug sales. Id. The government is correct
that "[t]he reasonable inference" from this testimony about set
shift times "is that this was by design of the drug point owners
not some accident or serendipity." (Docket No. 2905 at 7.) Many
witnesses also testified that sellers sold different drugs and
different brands simultaneously, from which a jury could find that
the owners of various drug types and brands had agreed to employ
the same group of sellers to sell the drugs. The government also
presented evidence that meetings between various persons involved

in drug trafficking took place in which logistical issues and problems were discussed and resolved.

        The evidence presented at trial by the government, especially when viewed together, allows for the conclusion that the events unfolding at La Quince and in other alleged drug point locales were the result of an agreement of some organized and well-laid plans.  See Sanchez-Badillo, 540 F.3d at 29 (the common goal factor is given "wide breath").  Selling cocaine for profit or "furthering the distribution of cocaine is . . . sufficient evidence" of a common goal.  United States v. Portela, 167 F.3d 687, 695 (1st Cir. 1999) (internal quotation and citation omitted). The First Circuit Court of Appeals will find "interdependence among the participants where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme.  Manqual-Santiago, 562 F.3d at 422.  (Internal citations and quotations omitted).  When schedules are set, roles established, and problem-solving meeting held, the existence of a conspiracy is plainly a plausible finding.

        The government also presented evidence from which the jury could have reasonably inferred each defendant's knowledge of that conspiracy.  Alfredo Sierra testified that Rodriguez, Negron and Maysonet were seen at the drug point distributing what was known as "La Prueba" - the samples given out for free as a common practice to potential customers of new drug batches.  Jesus Robles

testified that Rosario, Rodriguez, Maysonet, and Negron participated in some of the meetings held at the drug point among the participants in the drug-trafficking enterprise. Specifically, Sierra recalled in his testimony a meeting called to resolve a dispute regarding the sale of various cocaine brands at a drug point in which Maysonet and Rodriguez were both present. The evidence at trial adequately demonstrates that each defendant knew about the inner workings of an active drug conspiracy, and that each defendant participated willingly in it.

<u>Variance</u>

The defendants contend that the evidence presented at trial constituted a variance from the Indictment against them. A variance occurs when the crime charged remains unaltered, but the evidence presented at trial established facts different than those alleged in the indictment. <u>United States v. Mueffelman</u>, 470 F.3d 33, 38 (1st Cir. 2006). "To determine whether there was a variance," the First Circuit Court of Appeals "review[s] the record to determine whether the evidence and reasonable inferences therefrom, taken as a whole and in the light most favorable to the prosecution, would allow a rational jury to determine beyond a reasonable doubt" that a single conspiracy existed. <u>Manqual-Santiago</u>, 562 F.3d at 421. A variance "does not warrant reversal unless it is prejudicial, e.g., by undermining the defendant's right to have sufficient knowledge of the charge against him . . .

to prepare an effective defense and avoid surprise at trial, and to prevent a second prosecution for the same offense." U.S. v. Yelaun, 541 F.3d 415, 419 (1st Cir. 2008) (internal quotations and citations omitted).

As demonstrated above, no variance from the Indictment occurred in this case: the evidence adduced at trial supported the existence of a single conspiracy. See U.S. v. Mena-Robles, 4 F.3d 1026, 1033 (1st Cir. 1993) (variance claim failed where there was finding of sufficient evidence to support single conspiracy). While the defendants listed evidence that was not presented against them, such as the identity of a "central figure" to show that the government failed to show that they were guilty of participating in a single conspiracy, they fail to address the evidence that was presented against them which, taken together, more than justifies the jury's verdict. Equally without merit is the defendants' lists of reasons why the evidence supported their theory of multiple conspiracies, such as "violence between the groups," separate finances among different groups, different drug prices established by different groups, different wrappings used to package by different groups. Although such evidence may support the defendants' theory, "the evidence [in this case] is adequate to permit a reasonable trier of fact to have found a single conspiracy beyond a reasonable doubt that a single conspiracy existed." Manqual-Santiago, 562 F.3d at 421 (citing U.S. v. Boylan, 898 F.2d

230, 243 (1st Cir. 1990).  The government is correct in stating,
"[t]he proper consideration for the Court to decide a motion under
Rule 29 is whether the evidence presented was sufficient to sustain
the charges in the Indictment, not whether there is evidence in the
record to support Defendants' theory of defense."  (Docket No. 2905
at 6.)

        Even if a variance did exist the defendants have not
shown how they were prejudiced.  "A variance is fatal only if the
defendant shows prejudice."  United States v. Trainor, 477 F.3d 24,
35 (1st Cir. 2007).  "A variance between a charged single
conspiracy and evidence of separate conspiracies at trial is
prejudicial if the defendant was convicted based on evidence
pertaining to a separate conspiracy of which he was not involved."
Manqual-Santiago, 562 F.3d at 423 (citing United States v. Dunbar,
553 F.3d 48, 61-62 (1st Cir. 2009).  "Ordinarily, when the evidence
shows that the defendant was involved in criminal activities that
constituted separate conspiracies, no prejudice arises because the
defendant, himself, engaged in charged conduct attributable to each
conspiracy."  Id.  (internal citation omitted).  The evidence at
trial supports the jury's finding of guilt as to each defendant's
participation in a criminal conspiracy, thus the defendants
suffered no prejudice even in the event a variance from the
indictment occurred.

<u>Jury Instruction</u>

Defendants argue that the Court erred by failing to give a "proper set of instructions."[5]  (<u>See</u>, <u>e.g.</u>, Docket Nos. 2760 at 18; 2777 at 10-11).  To that end, during the charging conference in chambers the defendants requested a "multiple conspiracy instruction" that would allow the jury to consider the defendants' theory of defense.  The Court denied that motion.  According to the defendants, "the jury was not provided with the alternative of deciding whether one or more conspiracies were at stake despite the defense's request for a specific theory of defense instruction on multiple conspiracies."  (Docket No. 2777 at 9.)  As a result of the inadequate instructions given, the defendants claim the jury was left "without tools to understand the theory of defense" or to make an intelligent decision.  <u>Id.</u>

"It is well settled that a trial justice is not required to give specific instructions requested by a party so long as the charge of the trial justice adequately covers the subject matter relating to the request."  <u>State v. Oliveira</u>, 882 A.2d 1097, 1121 (R.I. 2005) (internal quotation and citation omitted).  "The failure by a district court to give requested  jury instructions is

---

[5] In support of their argument that the Court's failure to instruct the jury as to multiple conspiracies was an error requiring his acquittal, Defendant Rodriguez asks the Court to consider a case cited as "<u>United States v. Alvarez</u>, 07-1541 (1st Cir. June 24, 2009).  (Docket No. 2777 at 10.)  This improper citation format does not allow the Court to consider a review of that case, or its possible authority as to this issue.

only reversible error if the requested instruction '(1) is substantively correct; (2) was not substantially covered in the charge given to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense'." U.S. v. Marino 277 F.3d 11, 36 (1st Cir. 2002) (citing United States v. Williams, 809 F.2d 75, 86 (1st Cir. 1986).

The Court's instructions adequately covered the law about which the evidence at trial related.  Not only did the Court directly instruct the jury that they must find the defendants guilty of the agreement specified in the indictment, and not some other agreement, the Court also informed the jury that they must ascertain that "[T]he defendants knowingly and willfully joined in [the alleged conspiracy] agreement . . ." and ". . . that those who were involved shared a general understanding about the crime . . ." and that "mere similarity of conduct among various people, or the fact that they may have associated with each other or discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy, but you may consider such factors." (*Jury Instructions*, Docket No. 2624 at 19.)   The Court also instructed the jury that "a person who has no knowledge of a conspiracy, but simply happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator." Id.

The Court views its jury instructions to have substantially and adequately covered the government's burden to prove beyond a reasonable doubt each defendant's participation in the charged conspiracy.  Especially viewed in conjunction with the Court's additional instructions (1) reciting the government's burden of showing that each defendant participated knowingly and willingly in the conspiracy to be deemed conspirators, (2) stating clearly that association and similarity do not establish a conspiracy, and (3) reminding jurors that behavioral happenstance does not establish an individual's participation in a conspiracy, the Court rejects the defendants' opinion that the instruction used by the court is insufficient in instructing the jury as to the law. Accordingly, the Court finds that the instructions given to the jury in this case were proper.  On grounds that the Court's jury instructions erred, the defendants' motion is DENIED.

### C.   **Hearsay**

The Court next addresses the defendants' contention that the Court erred in admitting hearsay evidence.  The defendants argue that their convictions should be vacated because the convictions rest on "duly objected conconspirator statements that were introduced without following the procedure established for the admission of such evidence."  (Docket No. 2777 at 12.)  Federal Rule of Evidence 801(d)(2)(E) allows for the admission of statements made by a "co-conspirator of a party during the course

and in furtherance of the conspiracy." FED.R.EVID. 801(d)(2)(E);
See, e.g., U.S. v. Mitchell, 596 F.3d 18, 23 (1st Cir. 2010). Upon
an objection, a court will make a provisional ruling, known as a
Petrozziello ruling, to determine whether the contested statement
is admissible. See U.S. v. Famania-Roche, 537 F.3d 71, 75 (1st
Cir. 2008). There are two stages in a Petrozziello ruling:
"First, following a timely objection, the court makes a provisional
finding as to whether the evidence is admissible;" and, if so "that
finding is then subject to a second and final review at the close
of all the evidence." U.S. v. Dowdell, 595 F.3d 50, 73 (1st Cir.
2010) (citing Famania-Roche, 537 F.3d at 75). "At both stages, the
court applies a preponderance of the evidence standard, namely,
whether it is more likely than not that the declarant and the
defendant were members of a conspiracy when the hearsay statement
was made, and that the statement was in furtherance of the
conspiracy." Id. (internal citation and quotation omitted).

        Defendants contend that they timely objected "when the
prosecution sought to introduce coconspirator statements as part of
its case in chief," (Docket No. 2777 at 13), and that the Court
failed to make a particularized determination regarding the
admissibility of those statement as required under Petrozziello,
instead making a blanket finding. Defendants argue that each
statement "requires independent consideration and evaluation to
determin its admissibility." Id. (citing U.S. v. Capelton, 350

F.3d 231, 241 (1st Cir. 2003).  The text defendants quote from the case cited, Capelton, does not support the position that each alleged co-conspirator statement must be evaluated individually: "As a predicate for admitting evidence under this rule, the trial court must conclude that it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy."[6]  The First Circuit Court of Appeals has, conversely, held that even when a trial court did not make its Petrozziello rulings either "as explicitly" as the defendant "would like," or "explicitly separated out," the fact that rulings were made on the record that there was an existing conspiracy during which the contested statements were made in furtherance of that conspiracy, and that there were other rulings made throughout the trial proceedings supporting the finding of a conspiracy, "necessarily entail that the district court found by a preponderance of the evidence" that the statements should be admitted as con-conspirator statements.  U.S. v. Castellini, 392 F.3d 35, 50-51 (1st Cir. 2004).

Even if the Court's rulings as to each individual statement made during the trial were not perfectly specific or

---

[6] In fact, the First Circuit Court of Appeals found in Capelton that the admitted statements were properly admitted because the evidence adduced at trial satisfied the extrinsic proof requirement as stated in United States v. Sepulveda, 15 F.3d 1161 (1st Cir. 1993).

explicit, the defendants' argument on the grounds of improper
admission of hearsay statements fails for the simple reason that
the Court is unable to respond to that argument.  During the three-
month-long trial, the Court made numerous findings resulting in the
admittance of various co-conspirator statements.  The defendants
argue that the Court erred by not *specifying* its findings as to
each statement allegedly made by a co-conspirator, yet the
defendants themselves have not *specified* which statements were
admitted in error and, consequently, they cannot articulate how
those particular admitted-in-error statements resulted in any
harmful prejudice.  Without knowing which statements are even
contested, the Court cannot determine whether those statements were
admitted improperly under the hearsay exception for co-conspirator
statements.   For all these reasons, the Court denies the
defendants' motion to acquittal based on improperly admitted
hearsay testimony.

   D.   **Sufficiency Analysis for Counts Two through Five**

        Defendants also argue that the evidence was insufficient
to satisfy their convictions for Counts Two, Three, Four, and Five
of the indictment, charging them with aiding and abetting.   In
particular, as the government explains, each defendant challenges
his conviction for the aiding and abetting counts related to drug
types of which he was not the owner.  (See Docket No. 2905 at 13)
(citing, e.g., defendant Negron's challenge to his conviction for

aiding and abetting the distribution of crack, cocaine, and marijuana because he contends the evidence at trial only linked him with heroin).

For the evidence to be sufficient for each aiding and abetting charge, the government must have adduced evidence the would permit a reasonable jury to find beyond a reasonable doubt both that first, someone else "knowingly possessed and intended to distribute drugs and, second, that the defendant "consciously shared that criminal design, associated himself with it, and actively sought to ensure its success." United States v. Arias, 238 F.3d 1, 4-5 (1st Cir. 2001). As discussed above, the Court already has found that sufficient evidence was adduced at trial to establish a conspiracy as alleged in Count One, which satisfies the first prong of the aiding and abetting counts. The government also submits that this prong is satisfied by its introduction of several video recordings in which various individuals could be seen engaging in narcotics transactions. Additionally, the government reminds the Court that it called codefendant witnesses (including Alfredo Sierra, Jessica Jimenez, Jesus Robles) who themselves admitted in their testimony to having participated in those drug sales for the defendants. The Court agrees with the government that this evidence, together, demonstrates adequately that the defendants were "principals" who possessed and distributed the drugs as alleged in the indictment. Hence, the government is

correct that the dispute as to the sufficient of evidence turns only on the second prong required to show aiding and abetting: whether the defendants consciously shared the criminal design, associated themselves with it, and actively sought to ensure its success.

> The First Circuit Court of Appeals has stated that,

> While we have acknowledged that the challenge in aiding and abetting cases is framing the intent element for the jury, we have explicitly declined to require the shared intent language found in some of our opinions and in the First Circuit Pattern Jury Instructions. Instead, we have observed that a showing that the defendant consciously shared the principal's *knowledge* of the underlying criminal act, and intended to help him is one way for the government to fulfill its burden to show that a defendant participated in the venture and sought by his actions to make it succeed.

U.S. v. Perez-Melendez, 599 F.3d 31, 40 (1st cir. 2010) (emphasis in original) (citing United States v. Gonzalez, 570 F.3d 16, 28-29 (1st Cir. 2009).  Mere association is not sufficient; rather, "proof of sufficient participation in the crime, as well as knowledge of it, is required to convict . . . ." Id. (internal quotation and citation omitted).  Knowledge may either be actual, or the government may prove knowledge by showing that the defendants were wilfully blind.  United States v. Griffin, 524 F.3d 71, 78 (1st Cir. 2008) ("Evidence presented at trial may support either a finding of actual knowledge or a finding of willful blindness.")  Importantly, "[k]nowledge of the particular controlled substance being imported or distributed is not

necessary, and intent to distribute can be inferred from the quantity of drugs involved." U.S. v. Bristol-Martir, 570 F.3d 29, 30 (1st Cir. 2009)(internal quotation and citation omitted).[7]

    The record does not support the defendants' argument; as demonstrated even by examples and highlights of the evidence adduced at trial, the government met its burden with regard to the aiding and abetting counts in the indictment.  As stated in the government's brief, "the jury heard evidence that each and every Defendant was at the drug point at some point during the relevant time frame."  (Docket No. 2905 at 14.)  While mere presence would not be enough, the government is correct that a reasonable jury could have inferred from their presence at the drug point that the defendants were aware of the criminal activities occurring there (id.), or that they were wilfully blind to it.  Even without drawing any inference from the defendants' presence at the drug point, the jury heard from numerous cooperating witnesses, who were active participants in the drug conspiracy, each of whom testified that the defendants were aware of the drug scheme.

    Defendants maintain that the links between them and their involvement in the drug scheme are too weak to sustain their

---

[7] Although knowledge of the particular drugs is not required, in this case three government witnesses testified that they and other sellers would distribute more than one drug brand and type at once.  Thus the jury could infer that the defendants, if they were aware of the conspiracy at all, were aware that the conspiracy involved the distribution of a diversity of drugs.

convictions as to the charges of aiding and abetting.[8]  The Court
disagrees.  Even a defendant's "[p]resence on a single occasion may
support a conviction for aiding and abetting if the surrounding
circumstances lead to a reasonable inference that the defendant
must have been a knowing participant." United States v. Lema, 909
F.2d 561, 570 (1st Cir. 1990) (citations omitted and emphasis
added).  Cooperating witnesses Jesus Robles, Jessica Jimenez and
Alfredo Sierra described a system in which drug point owners worked
together to bring about a more profitable business for everyone:
the testimony of the government witnesses indicated that the drug
owners established shifts, coordinated payments of commonly used
lookouts from the proceeds of drug sales, agreed to sell their
drugs at the same place to stir up more business, and generally
worked together to increase traffic to the drug point. (See, e.g.,
Docket No. 2905 at 15.)  The government thus introduced ample
evidence at trial that the defendants all consciously tried to
bring about the success of the conspiracy to distribute the drugs.

        Notwithstanding all of the findings just stated, the
Court concurs with the government's sentiment that the sufficiency

_____

        [8] Because each defendant was found guilty of particular
charges, each defendant denies only the charges of which he was
found guilty.  As this discussion makes clear, however, the Court
finds that there was ample evidence on the record to permit a jury
to find every defendant guilty of every aiding and abetting charge
in the indictment for reasons common to the defendants.  Therefore
the Court addresses the evidence presented at trial as a whole, and
how that evidence would permit a verdict as to each defendant in
light of the totality of the evidence heard by the jury.

of the evidence as to each defendant regarding drug types for which the defendant was not the owner are "arguably close." Id. Yet "[t]he evaluation of the facts is entrusted largely to the jury," such that the Court "defer[s], within reason, to inferences formulated by the jury in the light of its collective understanding of human behavior in the circumstances revealed by the evidence." U.S. v. Gomes, 376. F.3d 42, 46 (1st Cir. 2004). The jury's verdict here is supported adequately by the record, and the Court will not disturb it.

### E.   Forfeiture Allegation

Because forfeiture decisions relate to penalty or sanction, they are viewed as part of sentencing and, as such, are based on a preponderance standard rather than proof beyond a reasonable doubt. U.S. v. Rogers, 102 F.3d 641, 647 (1st Cir. 1996). Federal Rule of Criminal Procedure 32.2 governs the proceedings for criminal forfeitures.[9] The defendants make a series of bizarre, unfounded arguments regarding the forfeiture proceedings. In sum, the defendants argue that the indictment failed to list any property sought to forfeit, that the government did not establish any nexus between the property subject to forfeiture and the charged offenses or prove by a preponderance of the evidence the basis of the amount of money to be forfeited, and

---

[9] The Court notes with concern that all defendants cited inaccurately the rules governing this issue. Rule 7(c)(2) has nothing to do with criminal forfeiture.

that the Court's forfeiture determination and Preliminary Order of Forfeiture were improper.  These arguments, included oddly as part of the defendants' motion for judgment of acquittal, are unfounded by legal authority and are rejected without adieu.

Rule 32.2 recognizes that there are two types of forfeiture judgments in criminal cases.  One type is a personal judgment involving a sum of money and the other is a judgment involving a particular asset or property interest.  Criminal forfeiture proceedings differ as a consequence of the type of judgment sought, a nuance the defendants in this case fail to address.

Rule 32.2(a) states clearly that the indictment "need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks." Fed.R.Crim.P. 32(a).  The government sought no specific property;

therefore the notice given in the indictment (stated improperly as Count 14)[10] was sufficient under Rule 32.

Next, the findings that a court must make depends on the nature of the judgment sought, money judgment or property judgment. There is no nexus requirement for a money judgment, only for specific property.  If the government seeks a money judgment, "the court must determine the amount of money that the defendant will be ordered to pay" as soon as practicable after a verdict or finding of guilty.  FED. R. CRIM. P. 32(b)(1)(A).

"In any case tried before a jury" in which forfeiture is sought, "the court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict." If the government seeks a money judgment, then the court must determine the amount of money forfeited, and this

---

[10]  The latest edition of the Federal Rules of Criminal Procedure state that notice "should not be designated as a count of the indictment or information." This labeling or styling error, however, is not what the defendants protest; the defendants protest that no notice was given, which is plainly incorrect and, as it relates to that protest, the labeling error is harmless, in that the defendants were put on notice that the government would seek a personal money judgment against them, even if that notice was labeled incorrectly.  The Court notes that the government attempted to comport with this rule, labeling the Count 14 as an "allegation", and that the government filed this case before the rule prohibited notice from being given as a "count" in the indictment.  The styling remains confusing, however, and in future indictments must be clarified.  (See Docket No. 2721 at 13-16.)

determination may be based on evidence in the record or additional evidence submitted by the defendant or the government.

The proceedings in this case comport entirely with Rule 32.2.  After the Court determined that no party had requested the forfeiture finding to be submitted to the jury, the jury began its deliberations.   During those deliberations, the parties discussed forfeiture in a hearing outside the presence of the jury. As the transcript of that hearing shows, the parties agree that no request had been made prior to deliberations (Docket No. 2721 at 8-13, 18, 22-24, 26), and therefore that the issue would not go to the jury.   The jury then returned its verdict, finding the defendants guilty as described at the start of this opinion.  After the reading of the verdict, the Court denied the pending motion (Docket No. 2658) submitted by defendants to dismiss the forfeiture count, (Docket No. 2721 at 53), then entered its preliminary order of forfeiture in accordance with Rule 32.2 (b)(2)(A), stating, *inter alia*, the defendants shall forfeit "a sum of money in United States currency equal to the amount of proceeds obtained as a result of the offenses described in Counts 1, 2, 3, 4 and 5 of the Indictment for which the Defendants are jointly and severally liable."  (Id. at 54.)  The Court's preliminary forfeiture was based on sound evidence in the record establishing the daily estimates of proceeds from drug sales in which the defendants participated.

These proceedings were proper. Defendants' argument that the forfeiture judgment should be vacated is incorrect and premature.  Rule 32.2 (b)(2)(B) allows specifically for the preliminary order to be entered in advance of sentencing to allow parties to "suggest revisions or modifications *before the order becomes final*."  FED. R. CRIM. P. 32 (b)(2)(B) (emphasis added).  The preliminary forfeiture order does not become final until sentencing.  "If, before sentencing, the court cannot . . . calculate the total amount of the money judgment, the court may enter a forfeiture order that" . . . "states that the order will be amended . . . when additional specific property is identified or the amount of the money judgment has been calculated."  FED.R.CRIM.P.  32.2  (b)(2)©.   Defendants have not offered information for this Court's consideration thus far, and their objections to the Court's stated amount in the preliminary order (a sum equal to the amount of proceeds from the defendant's participation in drug trafficking) are mistimed, misplaced, and unsupported by legal authority.  Therefore the Court DENIES the defendants' motion to vacate the preliminary forfeiture order.

## II.  Motion for New Trial

Defendants move the Court for a new trial pursuant to Federal Rule of Criminal Procedure 33, which provides that "[u]pon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  In support of

this motion, defendants merely list boilerplate grounds upon which courts have ordered a new trial in the interests of justice, in no way linking those generalized interests to the facts or circumstances in this case. (See, e.g., Docket Nos. 2777 at 17-18; 2760 at 25-26.)  Without more, there is nothing for the Court to review or analyze.  The Court will not respond to boilerplate arguments.  See United States v. Soto-Beníquez, 356 F.3d 1, 43 (1st Cir. 2004); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

The motions for new trial are accordingly **DENIED**.

## CONCLUSION

Wherefore, based on the reasoning above, the defendants' motions for acquittal and or new trial are hereby **DENIED on all grounds**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, July 22, 2010.

                              s/ FRANCISCO A. BESOSA
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE